DIVERSIFIED HEALTH
ASSOCIATES, INC.,

v.

ZONING HEARING BOARD OF THE
BOROUGH OF NORRISTOWN.

**Appeal of Borough of Norristown.**

Commonwealth Court of Pennsylvania.

Argued June 4, 2001.
Decided July 9, 2001.

Michael P. Gottlieb, Norristown, for appellant.

Sean P. Flynn, Norristown, for appellee, Diversified Health Associates, Inc.

Robert A. Saraceni, Norristown, for appellee, Zoning Hearing Board of the Borough of Norristown.

Before COLINS, and McGINLEY, Judges, and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

The Borough of Norristown (Appellant) appeals from an order of the Montgomery County Court of Common Pleas (trial court) which reversed the decision of the Zoning Hearing Board of the Borough of Norristown (ZHB). The ZHB found that the substance abuse treatment center Diversified Health Associates, Inc. (Appellee) proposes to operate in the borough is not a hospital as that term is defined in the Norristown Borough Zoning Ordinance (Ordinance) and is therefore not permitted in the Health Care (HC) zoning district in which Appellee's property is located. We affirm the order of the trial court.

Appellee filed an Application for Zoning Permit with Appellant's Zoning Officer seeking to use the property at 1529 DeKalb Street, Norristown, PA, as a 30 to 50 bed adult substance abuse inpatient treatment center. Appellee asserted that, because the facility will provide people with treatment such as stress management, exercise and nutrition, health considerations and instruction about the physiological and psychological aspects and effects of addiction, the proposed use meets the definition of "hospital" set forth in the Ordinance. (R.R. at 3–4). Section 320–7 of the Ordinance states that a hospital is:

[a] place for the diagnosis, treatment or other care of humans and having

facilities for inpatient care, including such establishments as a sanitarium or preventorium.

(R.R. at 327). The Zoning Officer determined that Appellee's proposed facility does not meet the definition of hospital in the Ordinance but does meet the definition of an "Institutional Home", which is defined in the Ordinance as:

[a] building occupied as a dwelling by seven (7) to fifteen (15) residents who receive twenty-four-hour resident supervision, licensed under an applicable state program.

(R.R. at 327). Because the proposed use would be for a 30 to 50 bed treatment facility, the Zoning Officer advised Appellee that a variance would be required.[1]

Appellee appealed to the ZHB and the appeal was reviewed by Appellant's Planning Commission, which unanimously recommended that it be denied. Thereafter, hearings were held before the ZHB on December 28, 1999 and February 16, 2000.

Appellee presented the testimony of Carmen Booker Larkin, who would be the facility director of the proposed treatment center. She testified that Appellee's proposed use of the property is a fifty-bed treatment facility that will be licensed by the Commonwealth of Pennsylvania's Bureau of Drug and Alcohol Programs and would provide a 90 to 120 day treatment program. The employees of the facility would include a clinical supervisor, nine clinicians, two cooks and twelve security house managers. The treatment performed by the clinicians would include group therapy, group activities, anger management, relapse prevention, rebuild-

1. Appellee filed another application seeking a variance which was denied by the ZHB. Appellee appealed to the trial court, but subsequently withdrew its appeal. Therefore, the only issue before this court is whether the proposed substance abuse treatment facility is a "hospital" as defined by the ordinance.

ing of family relationships, repairing relationships with estranged children, dealing with the patient's legal and criminal background, if applicable, parenting, social skills, and GED classes. (R.R. 154–156). As to where the patients would come from, Ms. Larkin stated that Appellee currently has a contract with the Department of Corrections which will pay Appellee to provide treatment, although patients would come from several different referral sources. (R.R. 162 and 202). However, Ms. Larkin testified that Appellee has strict admission criteria and that they would not accept patients that have committed violent crimes. (R.R. 176). Also, patients that come from the Department of Corrections would not be allowed to walk out of the facility into the community. (R.R. 170). Ms. Larkin also stated that some of the patients would be coming to the facility after being ordered into treatment by a court and, if they left the facility, they would be in violation of a court order. (R.R. at 203).

At the February 16, 2000 hearing, the board heard statements from the residents of the borough, who voiced their concerns about a substance abuse treatment facility being located near their homes. All the residents were opposed to the proposed facility and extremely concerned about their safety given that some of the patients would either be coming to the facility directly from prison or would be forced to go to the facility by a court order. The residents were of the opinion that the treatment center would be more akin to a prison or a halfway house rather than a hospital.

On March 13, 2000, the ZHB issued a decision and order finding that Appellee's proposed treatment facility does not qualify as a hospital and therefore is prohibited by the Ordinance. In support of its decision, the ZHB cited Section 320 of the Ordinance, which specifies the uses permitted in the HC Zoning District.[2] Appellee appealed to the trial court, which reversed the decision of the ZHB. The trial court determined that the ZHB abused its discretion and committed an error of law by finding that Appellee's proposed facility does not meet the definition of hospital set forth in Section 320–7 of the Ordinance. The trial court reasoned that the language of the Ordinance is extraordinarily broad and that the term hospital must be construed broadly so as to give the landowner the least restrictive use of the land. Accordingly, the trial court reversed the decision of the ZHB. This appeal followed.

■ Because the trial court did not take any additional evidence, our scope of review is limited to determining whether the Zoning Board committed an error of

2. Section 320–85 of the Ordinance states:
The following regulations shall apply in all § 320–86. Legislative intent.
HC Health–Care Districts.
The purpose of the Heath Care District is to recognize the locations and types of health-care and related uses in the Montgomery County and Sacred Heart Hospital area of the borough and to provide for the logical and appropriate expansion and development of such uses to meet the long-range health-care needs of the community and region while preserving nearby residential areas.
§ 320–87. Use regulations.
A building may be erected, altered or used and a lot may be used or occupied for any of the following purposes and no other:

A. Medical or surgical hospital.
B. Hospital administrative and professional staff offices.
C. Hospital medical laboratories.
D. Offices of one (1) or more licensed health-care professionals, including physicians, chiropractors and psychologists.
E. Medically related laboratories providing services to physicians or to the public directly.
F. Medical colleges, nursing schools or health-care professional educational uses.
. . .
(R.R. at 328–329).

law or manifestly abused its discretion. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). The zoning board's role is that of the factfinder, and "[a] conclusion that the Board abused its discretion may be reached only if its findings are not supported by substantial evidence." *Constantino v. Zoning Hearing Board of Borough of Forest Hills,* 152 Pa.Cmwlth. 258, 618 A.2d 1193, 1195 (1992). Furthermore, "[w]hether a proposed use, as factually described in the application and the testimony, falls within a given categorization contained in the zoning regulations is a *question of law,* on which the zoning board's determination is subject to review." *Manor Healthcare Corporation v. Lower Moreland Township Zoning Hearing Board,* 139 Pa.Cmwlth. 206, 590 A.2d 65, 68 (1991) (citing *Merry v. Zoning Board of Adjustment,* 406 Pa. 393, 395, 178 A.2d 595, 597 (1962)).

 Undefined terms in a zoning ordinance are given their common, everyday meaning by consulting such sources as statues, regulations and the dictionary *Id.* However, "enactment of a specific definition in the ordinance produces a different effect because the legislative body may furnish its own definitions of words or phrases in order to guide and direct judicial determinations ... and such definition may be different from ordinary usage." *Tohickon Valley Transfer, Inc. v. Tinicum Township Zoning Hearing Board,* 97 Pa. Cmwlth. 244, 509 A.2d 896, 899 (1986). Additionally, "any doubt must be resolved in favor of the landowner and the least restrictive use of the land." *Kissell v. Ferguson Township Zoning Hearing Board,* 729 A.2d 194, 197 (Pa.Cmwlth. 1999).

Appellant argues that Appellee's proposed use of the property as a substance abuse treatment center is not permitted because the property is zoned HC, where only health care related businesses that meet the definition of a hospital may be located. Appellee argues that the definition of hospital in the Ordinance is broad and encompasses its proposed use of the property.

The Ordinance states that a hospital is "[a] place for the diagnosis, treatment or other care of humans ... including such establishments as a *sanitarium.* ..." Because sanitarium, or sanatorium as that term is also spelled, is not defined, we must look to another source to determine its common, ordinary meaning. The Merriam Webster Collegiate Dictionary (10th ed.2000) defines a sanatorium in its long accepted meaning as "1: an establishment that provides therapy combined with a regimen (as of diet and exercise) for treatment or rehabilitation 2 a: an institution for rest and recuperation (as of convalescents) b: an establishment for the treatment of the chronically ill." Also, in *School Lane Hills v. East Hempfield Township Zoning Board,* 18 Pa.Cmwlth. 519, 336 A.2d 901 (1975), "this court noted that an Easter Seal rehabilitation facility could not be considered an "appropriate public use" of a "welfare and educational nature" because is fit more specifically into the zoning category of "hospital" which included "sanitarium" in its definition." *Conners v. Zoning Hearing Board of Chippewa Township,* 88 Pa.Cmwlth. 625, 491 A.2d 304, 306 (1985).

Furthermore, in *Wagner v. City of Erie Zoning Hearing Board,* 675 A.2d 791 (Pa. Cmwlth.1996), the zoning hearing board granted variances to Community Shelter Services, Inc. for the purpose of converting a building into a fifty-unit residence for low income and homeless persons. The appellants were opposed to this use because of the potential for chronic drug and alcohol abusers and people with mental

health problems coming to live there. However, this court held that "even IF that type of population were to inhabit the building, they could reside in a "group care facility," "a group residence facility," a "rooming or boarding home," or a "tourist home," all of which are types of living arrangements defined in the zoning ordinance and expressly permitted [in the zoning district]." The argument that "this type of resident should not be permitted to reside in this neighborhood ... has never been a proper basis for refusing a variance." *Id.* at 798.

 Whether the proposed facility is a "hospital" is a question of law. *Manor Healthcare.* The legislative intent of the Ordinance seems conflicting, in that the definition of hospital in Section 320–7 seems to include Appellee's proposed use, whereas Section 320–87 which describes the legislative intent does not seem to provide for a substance abuse treatment center in the HC Zoning District. However, when both Sections are read together, it is evident that Appellee's use is permitted. Section 320–87 list a "medical or surgical hospital" as a permitted use, and Section 320–7 defines the term "hospital" very broadly by including "sanitarium" in its definition. Because Appellee's proposed use would provide treatment and rehabilitation for substance abuse problems, it could be considered a "sanitarium" and would thus be a "hospital" as that term is defined in the Ordinance. Including Appellee's substance abuse treatment facility in the definition of "hospital" is consistent with the Ordinance's broad definition of that term and, as the trial court noted, resolves any doubt in favor of the landowner and gives Appellee the least restrictive use of its land. Therefore, Appellee's proposed substance abuse treatment facility is an allowable use in the HC Zoning District.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, July 9, 2001, the order of the Court of Common Pleas of Montgomery County dated February 12, 2001 and docketed at No. 2000–04677 is hereby affirmed.