Mar-Del Holdings, LLC,     :
    :
    Appellant    :
    :
    v.    : No. 1512 C.D. 2018
    : Submitted: December 12, 2019
Orange Township Board of    :
Supervisors    :
    :
    v.    :
    :
Patricia Brewster, Robert Brewster,  :
Fred Brockway, Jan Brockway,    :
John D'Orazio, Pam D'Orazio,    :
Susan B. Fetterman, Nathanial Flook, :
Sherry Flook, Charles Fritz, Jennifer  :
Fritz, Corey Hughes, Jaylenn Miller,  :
Andrew Smith, Christine Smith,    :
Eric Sorg and Erin Sorg    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
        HONORABLE MICHAEL H. WOJCIK, Judge
        HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                  FILED: March 9, 2020

        Mar-Del Holdings, LLC (Landowner) appeals the order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) (trial court) that affirmed the Orange Township (Township) Board of Supervisors'

(Board) decision, which denied Landowner's conditional use application[1] to construct a campground and recreational vehicle (RV) park[2] on its property in the Township's Rural Zoning District pursuant to the Township's Zoning Ordinance.[3]

---

[1] Section 603(c)(2) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10603(c)(2) states, in relevant part:

> Zoning ordinances may contain . . . provisions for conditional uses to be allowed or denied by the governing body . . . pursuant to express standards and criteria set forth in the zoning ordinance. . . . In allowing a conditional use, the governing body may attach such reasonable conditions and safeguards . . . in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance[.]

*See also* Section 909.1(b)(3) of the MPC, added by the Act of December 21, 1988, 53 P.S. §10909.1(b)(3) ("The governing body . . . shall have exclusive jurisdiction to hear and render final adjudications . . . [on a]pplications for conditional use under the express provisions of the zoning ordinance pursuant to section 603(c)(2)."); Section 913.2(a), added by the Act of December 21, 1988, 53 P.S. §10913.2(a) ("Where a governing body, in zoning ordinances, has stated conditional uses to be granted or denied by the governing body pursuant to express standards and criteria, the governing body shall hold hearings on and decide requests for such conditional uses in accordance with such standards and criteria. . . . In granting a conditional use, the governing body may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act in the zoning ordinance.").

As this Court has explained:

> A conditional use is a special exception which falls within the jurisdiction of the municipal legislative body rather than the zoning hearing board. The municipal legislative body may grant a conditional use pursuant to express standards and criteria set forth in the zoning ordinances enacted pursuant to the police powers to regulate land use. The fact that a use is permitted as a conditional use, rather than prohibited, reflects a legislative decision that the use is not *per se* adverse to the public interest.

> In order to demonstrate that the applicant is entitled to the conditional use, the applicant initially bears the burden of

**(Footnote continued on next page…)**

On October 12, 2016, the Township received Landowner's Application for Conditional Use regarding its property located on the south side of LR 19030 (Mt. Pleasant Road), and on the east side of LR 19031 (Charmund Road), and west of the Sand-Bur housing development in the Township.[4] In the

---

**(continued…)**

> establishing that the application complies with the objective standards and criteria of the particular ordinance. Satisfaction of the applicant's burden establishes a legislative presumption that the use is consistent with the health, safety, and welfare of the community. Once the applicant has satisfied this initial burden, the burden shifts to the objectors to rebut this presumption by establishing that the use will have a detrimental impact on the surrounding community.

*In re Richboro CD Partners, L.P.*, 89 A.3d 742, 745 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014) (citations omitted).

[2] Section 3.300 of the Zoning Ordinance defines "Campground or [RV] Park" as "[a] plot of ground upon which two or more campsites are located, established or maintained for temporary occupancy by persons using tents or [RVs], and which shall not be used for long term occupancy or residency of occupants." Reproduced Record (R.R.) at 967a.

[3] Patricia Brewster, Robert Brewster, Fred Brockway, Jan Brockway, John D'Orazio, Pam D'Orazio, Susan B. Fetterman, Nathanial Flook, Sherry Flook, Charles Fritz, Jennifer Fritz, Corey Hughes, Jaylenn Miller, Andrew Smith, Christine Smith, Eric Sorg, and Erin Sorg (collectively, Objectors) oppose the application and intervened in the trial court appeal of the Board's decision.

[4] Section 1108.4 of the Township's Zoning Ordinance sets forth the standards and criteria required for the grant of a conditional use, stating, in relevant part:

> A. The proposed use shall be in harmony with [the] purposes, goals, objectives and standards of . . . this Ordinance and all other ordinances of the Township.

**(Footnote continued on next page…)**

3

(continued…)

B. The proposal shall also be evaluated as to the degree to which the proposed location may be particularly suitable or unsuitable for the proposed use in terms of the physical characteristics of the site.

C. The proposed use at the proposed location shall not result in a substantial or undue adverse effect on adjacent property, the character of the neighborhood, traffic conditions, . . . adjacent property values, or other matters affecting the public health, safety, and general welfare, either as they now exist or as they may in the future be developed as a result of the implementation of this Ordinance, or any other plan, program, map or ordinance of the Township.

* * *

D. In reviewing an application, the following additional factors shall be considered:

* * *

2. Adequacy and arrangement of vehicular traffic access and circulation, including intersections, road widths, pavement surfaces, dividers and traffic controls.

* * *

5. Adequacy of storm water and drainage facilities [and] storm water leaving any site shall not exceed pre-development levels and facilities shall be designed to accommodate a 10-year storm.

* * *

7. Adequacy, type and arrangement of trees, shrubs and other landscaping constituting a visual and/or noise buffer between the applicant's and adjoining lands, including the maximum retention of existing vegetation.

* * *

(Footnote continued on next page…)

past, and at the time of application, the property was used as a quarry to excavate fill. The property is located near Fishing Creek, a tributary to the Susquehanna River, and is subject to flooding from Fishing Creek, which last occurred as a result of Tropical Storm Lee in 2011. The property is located in a floodplain as designated in the Township's Floodplain Ordinance and a portion of the property is in a designated floodway.[5]

---

**(continued…)**

> 9. Special attention to the adequacy and impact of structures, roadways and landscaping in areas with susceptibility to ponding, flooding and/or erosion.
>
> E. No application shall be approved unless it is found that, in addition to complying with each of the standards enumerated above, any of the application standards contained in this Ordinance shall be met. In instances where the supplemental standards contained herein do not adequately protect the general health, safety and welfare of parties affected, all conditions and safeguards deemed necessary by the Board to protect the general health, safety and welfare and implement the purposes of this Ordinance and the [MPC] shall be imposed as conditions of approval[.]
>
> * * *
>
> The applicant shall supply evidence regarding compliance with the express standards and criteria contained herein; and data or evidence may be accepted from protestants. Such evidence shall be evaluated relative to the injurious impact on the health, safety and welfare of the Township; and the proposed use shall be approved with appropriate conditions or denied based on said evaluation.

R.R. at 1121a-1122a.

[5] Section 1201.2 of the Zoning Ordinance states that "[i]t shall be unlawful for any . . . corporation to undertake, or cause to be undertaken, any construction or development anywhere **(Footnote continued on next page…)**

In the application, Landowner proposes to use the property as a campground and RV park with a primary entrance/exit from and to Mt. Pleasant Road, and a gated emergency exit controlled by the campground and the RV park's manager. The manager will work from 8:00 a.m. to 4:00 p.m. or 5:00 p.m.; no security will be on site. The proposed use will be open for business 180 days per calendar year, from April to October.

Landowner proposes to install 50 pads for RVs with a minimum RV size of 21 feet. Landowner also proposes to place fill on the property to raise it above the designated floodplain level so that the fill will create a bank that will be sloped at a 2-to-1 ratio. Landowner does not intend to erect a fence at the edge of the slope except in an area adjacent to an existing pond.

The Board conducted hearings on Landowner's application at which a number of Objectors testified and presented the expert testimony of Edmund Poggi, III, a certified real estate broker/appraiser, and Brandon Guiher, a certified professional civil engineer. Landowner's principal testified and presented expert testimony in support of the application as well.

---

**(continued…)**

within an identified floodplain area in the Township unless a permit has been issued by the Township in accord with this Ordinance." R.R. at 1126a. Section 1202.1 states that "[p]ermits shall be required before any construction or development is undertaken within any identified floodplain area in the Township." *Id.* Section 1202.2 provides that a permit can only be issued "after it has been determined that the proposed work . . . will be in conformance with the requirements of this and all other applicable codes and ordinances," and that no permit shall be issued until it has been determined that "all other necessary government permits required by State and Federal laws have been obtained." *Id.* at 1127a. Likewise, Section 1204.1.B.1. states that "[w]ithin any designated floodway (FW) area, no new construction, development, use, activity, or encroachment of any kind, shall be allowed, except where the effect of such proposed activity on flood heights is fully offset by accompanying improvements." *Id.* at 1130a.

6

On October 25, 2017, the Board issued a decision disposing of the application finding, in relevant part:

19. The proposed use will have the following adverse effects on the neighborhood:

A. Vehicles from 50 campsites entering and exiting the Property will significantly increase traffic on the two-lane, twenty-two foot wide macadam Charmund Road and the two-lane, twenty-two foot wide macadam Mt. Pleasant Road during the months of operation of the campground and [RV] park.

B. No screening is provided to block the view of the campground and [RV] park from the neighboring residences.

C. The normal activities at a campground and [RV] park, such as campfires, music, and loud conversations, will adversely affect the quiet peace and enjoyment of neighboring residential developments.

D. Placing fill on the Property so that the Property is above flood elevation will cause Fishing Creek flood waters to backup and increase flooding on adjacent properties.

E. The proposed use will have an adverse effect on property values in the neighboring residential developments.

R.R. at 21a.

Based on the foregoing, the Board concluded that Landowner failed to meet its burden of proving that the proposed use is suitable with respect to the physical characteristics of the site, as required by Section 1108.4(B) of the Township's Zoning Ordinance, because: (1) it is located in a designated floodplain with a portion in a floodway, as designated in the Township's Floodplain Ordinance; (2) placing fill on the property to raise it above the designated flood elevation will increase flooding on adjoining properties; (3) placing fill on the

7

property to raise it above the designated flood elevation will create a 2-to-1 slope on the western edge of the property, which will present a danger to campers and RVs; (4) the increased traffic entering and exiting the property through the one entrance/exit on Mt. Pleasant Road over an annual 180-day period will be a burden to the residents of the 62 homes nearby and the normal traffic on Mt. Pleasant Road; and (5) no adequate emergency exit from the property to Charmund Road exists because of the 2-to-1 slope of the fill to raise the property above the designated flood elevation. R.R. at 22a.

The Board also concluded that Landowner failed to meet its burden of proving that the proposed use meets the requirements of Section 1108.4(C) of the Zoning Ordinance because: (1) it will have an adverse effect on the value of the 62 nearby homes and the normal activities at a campground and RV park will disrupt the quiet enjoyment of the neighboring properties; (2) the 50 campsites on the campground are incompatible with the 62 conventional single-family residences that are nearby; (3) it will result in a substantial or undue adverse effect on traffic conditions in the neighborhood because only one entrance/exit from and to Mt. Pleasant Road is planned with no entrance or exit from Charmund Road, causing a substantial increase in traffic from vehicles entering and exiting the Property; (4) it will result in a substantial or undue adverse effect on adjacent property values because of the incompatible nature of the traditional residential neighborhoods and a campground and RV park based on the different activities associated with the two uses, as well as the adverse effect on the residences where the campground and RV park is visible; and (5) it will result in a substantial or undue adverse effect on public health, safety, and general welfare due to the adverse effects on the

8

neighboring residential properties, the traffic on Mt. Pleasant Road, and the potential increase in flooding in the surrounding area. R.R. at 23a-24a.

The Board also concluded that Landowner failed to meet its burden of providing evidence of the adequacy, type, and arrangement of trees, shrubs, and other landscaping constituting a visual and/or noise buffer between the property and the neighboring properties as required by Section 1108.4(D)(7) of the Zoning Ordinance because no visual or noise buffer is provided to shield the view of the campground and RV park from the neighboring residences that are within audible range of the sounds and noises that would emanate from the campground and RV park. R.R. at 24a. Finally, the Board concluded that Landowner failed to sustain its burden of proving the adequacy and impact of the proposed campground and RV park on the structures, roadways, or landscaping in areas prone to flooding, as required by Section 1108.4(D)(9), based on the effect of placing fill to raise the property above the designated flood elevation. *Id.* Accordingly, the Board denied Landowner's application. *Id.*

On November 15, 2017, Landowner appealed the Board's decision to the trial court in which Objectors intervened. On April 13, 2018, the trial court conducted argument on the appeal without receiving additional evidence. *See* R.R. at 919a-936a. On October 31, 2018, the trial court issued an order affirming the Board's decision[6] and Landowner filed the instant appeal.[7]

---

[6] In its Pa. R.A.P. 1925(a) Opinion filed in support of its order, the trial court noted that "[t]he [B]oard concluded that the proposed use failed to meet §1108.4(B), (C), (D)(7), and (D)(9) of the [] Township['s] Zoning [O]rdinance due to the five adverse [e]ffects." R.R. at 941a. As the trial court explained:

> [Landowner's] expert witness, Arthur Thomas, testified
> that the proposed use would increase traffic in the predominantly

**(Footnote continued on next page…)**

9

**(continued…)**

residential [area] for [180] days of the year. His impact study was based on the campgrounds having [2] access roads when the proposed use plan before the [B]oard only had [1]. Kevin Conahan also testified that the proposed use would generate [400] trips per week. Therefore, the Court finds the [B]oard could properly have found that [Landowner] had not met its burden.

The Court will analyze the lack of screening and loud activities in conjunction since adequate screening affects the noise that reaches the nearby properties. The Court notes that [Landowner] admits that the property for the proposed use as it is now does not meet the minimum screening requirements, but that it is part of the plan to meet those screening requirements. The Court, upon reviewing the record, finds that [the B]oard was presented with substantial relevant evidence for a reasonable mind to find that [Landowner] had met [its] burden on this issue and finds the [B]oard erred in finding otherwise. However, the screening may still be inadequate to prevent or lessen the noise from the proposed campground. Evidence was presented that [50] camping locations would be included as part of this proposed use in an area with only [62] current residences. Further, [Landowner] provided evidence of planned rules regarding times for campfires and that a manager and assistant manager would be on property to ensure that the rules [would be] followed. The Court finds that the evidence presented to the [B]oard was sufficient for the issue of noise to be brought before the [B]oard, but that a reasonable mind could find relevant evidence was presented to support the [B]oard's decision including the current lack of screening along with only tentative plans to lessen noise.

The [B]oard received evidence in the form of expert testimony that the mound that would be part of the proposed use could not only erode if done improperly, but would displace water onto adjacent properties. The Court finds the [B]oard's determination to be supported by relevant and ample evidence that the proposed use would increase flooding on adjoining properties, which would lead a reasonable mind to support [its] findings.

**(Footnote continued on next page…)**

In this appeal, Landowner first claims that the Board's decision is not supported by substantial evidence. Specifically, Landowner asserts that the Board's findings of fact regarding the adverse effects of increased traffic, a lack of screening, excessive noise, increased flooding on adjacent properties, and lowering property values, and concluding that the requirements of Section 1108.4(B), (C), and (D) were not met, lack sufficient evidentiary support thereby constituting an abuse of the Board's discretion in denying Landowner's conditional use application. In essence, Landowner would have this Court reinterpret the evidence presented to the Board in favor of granting the application.

However, the Board is the sole judge of the credibility of witnesses and the weight to be afforded their testimony. *Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 518 (Pa. Cmwlth.), *appeal denied*,

---

**(continued…)**

> Objectors' appraisal expert, Poggi, testified that the proposed use would negatively impact nearby property values. This evidence along with the evidence of more traffic in the area, loud activity, and increased flooding risk to adjacent properties could lead a reasonable mind to find that the proposed use would negatively impact property values. The Court finds that the [B]oard had evidence before it to support its finding that the proposed use would lower nearby property values and conclude [that Landowner] had failed to meet [its] burden.

*Id.* at 941a-942a (citations and footnote omitted).

[7] In a land use appeal where the trial court does not take additional evidence, our review is limited to determining whether the local governing body abused its discretion or committed an error of law. *In re Thompson*, 896 A.2d 659, 666 n.4 (Pa. Cmwlth. 2006). The governing body abuses its discretion when its findings of fact are not supported by substantial evidence. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (Citations omitted.)

11

101 A.3d 788 (Pa. 2014). It is the Board's function to weigh the evidence before it and this Court may not substitute its interpretation of the evidence for that of the Board. *Id.* Assuming that the record contains substantial evidence,[8] we are bound by the Board's findings that resulted from resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence. *Id.* Further, the Board is free to reject even uncontradicted testimony that it finds lacking in credibility, including testimony offered by an expert witness, and it does not abuse its discretion by choosing to believe the opinion of one expert over that offered by another. *Id.*

Guiher's credited testimony shows that the placement of significant amounts of fill in the floodplain could cause flooding in areas that have not flooded before. R.R. at 680a-681a. Even Landowner's expert conceded that the proposed use of fill to construct the mound on the property would displace water onto the land of adjacent landowners, which could adversely affect those landowners. *Id.* at 481a-483a. Objectors' expert also stated that if the mound is not properly compacted, the bank could be washed away by erosion from flooding. *Id.* at 686a.

The credited testimony of Poggi also shows that the proposed use would negatively impact the value of the homes in the adjacent subdivisions. R.R. at 596a-597a. The impact on the value would be notable because the price range of the homes could be reduced by tens of thousands of dollars. *Id.* at 597a. Landowner's assertion that the testimony of its expert, Linda Woodward, was more

---

[8] When performing a substantial evidence analysis, this Court must view the evidence in the light most favorable to the party that prevailed before the Board. *Liberties Lofts LLC v. Zoning Board of Adjustment*, 182 A.3d 513, 530 (Pa. Cmwlth. 2018). It is irrelevant whether the record contains evidence to support findings other than those made by the Board; rather, the critical inquiry is whether there is evidence to support the Board's findings. *Id.* If there is evidence to support those findings, this Court may not disturb the Board's findings. *Id.*

persuasive must be rejected as it is not this Court's role to reweigh the evidence on appeal.

Objectors also presented credible testimony that the proposed use would: (1) result in increased traffic, R.R. at 711a; (2) result in light pollution, *id.* at 712a; (3) be dangerous due to inadequate supervision and security, *id.* at 713a; (4) endanger the lives and property of nearby property owners, *id.* at 742a-747a; (5) cause noise pollution from motorcycles and ATVs, *id.* at 749a-750a; (6) cause smoke from fires to permeate through the nearby homes, *id.* at 750a-753a; (7) lead to park visitors venturing onto neighboring properties because there is little to do on site, *id.* at 765a; and (8) attract people who are not permanent residents and have no vested interest in the community, *id.* at 782a. Although Landowner asserted that screening would be provided in compliance with the Zoning Ordinance requirements, an intention or promise to comply with the requirements is insufficient to show entitlement to a conditional use. *In re Richboro CD Partners L.P.*, 89 A.3d at 749.

Further, a consideration in reviewing Landowner's application is the adequacy and arrangement of vehicular traffic and circulation. *See* Section 1108.4(D)(2) of the Township's Zoning Ordinance. The traffic study that Landowner submitted was an original plan submitted to the Board, which had two entrances and exits onto separate roads. The revised plan submitted herein has only one point of ingress and egress onto Mt. Pleasant Road with no entrance or exit from Charmund Road. The traffic study also failed to plan for access to Fishing Creek, one of the campground's amenities, from the subject property because the creek does not abut the property. R.R. at 223a. Landowner proposed

13

to allow guests to access the creek by walking along the shoulder of the roadway to get to the creek. *Id.* at 223a, 281a.

Finally, Landowner claims that the Board erred in shifting the burden of proof. Specifically, Landowner contends that the criteria upon which the Board relied to deny the application are general requirements in the Zoning Ordinance that do not fall within Landowner's burden but, rather, must be proven by Objectors. With respect to Section 1108.4(C), Landowner asserts that the Board erred in concluding that it was Landowner's burden to show no adverse impacts on the health, safety, and welfare of the community because it was Objectors' burden to prove that there is a high degree of probability that a result not normally generated by this type of use will occur. *See, e.g.*, *Appeal of Martin*, 529 A.2d 582, 584 (Pa. Cmwlth. 1987). Likewise, with regard to suitability as set forth in Section 1108.4(B), Landowner contends that demonstrating these requirements remains Objectors' duty and burden. *See id.* at 583 (addressing the objectors' burden for general standards that a site is "an appropriate location for such use"). Further, Landowner submits that the criteria set forth in Section 1108.4(B) and (C) are general, as opposed to specific in nature, so the duty and burden remained with Objectors. *Id.* Landowner further claims that Objectors failed to show to a high degree of probability that the proposed use would have a greater adverse impact than would normally be expected from a campground or RV park or that the use will pose a substantial threat to the health, safety, and welfare of the community. Moreover, any such evidence that Objectors presented was speculative so that they failed to meet their burden of proof.

However, as outlined above, to demonstrate that it is entitled to the conditional use, Landowner initially bore the burden of establishing that its

application complies with the objective standards and criteria of the Township's Zoning Ordinance. *In re Richboro CD Partners, L.P.*, 89 A.3d at 745. If this burden is satisfied, it establishes a legislative presumption that the use is consistent with the health, safety, and welfare of the community. *Id.* Additionally, if Landowner satisfied this initial burden, the burden then shifted to Objectors to rebut this presumption by establishing that the use will have a detrimental impact on the surrounding community. *Id.*

As also outlined above, Section 1108.4(E) of the Township's Zoning Ordinance placed the initial burden on Landowner to present sufficient evidence demonstrating that the specific and general criteria for the grant of a conditional use have been met. Additionally, Section 1108.4(E) specifically provides:

> The applicant shall supply evidence regarding compliance with the express standards and criteria contained herein; and data or evidence may be accepted from protestants. Such evidence shall be evaluated relative to the injurious impact on the health, safety and welfare of the Township; and the proposed use shall be approved with appropriate conditions or denied based on said evaluation.

R.R. at 1122.[9] The Board properly found that Landowner failed to sustain its burden in this regard by crediting Objectors' evidence that the campground and

---

[9] As the Pennsylvania Supreme Court has explained:

> The concepts of burden of production and burden of proof do not mean the same thing in the context of a hearing on a conditional use application. The Commonwealth Court has previously explained that, if a Borough's zoning ordinance explicitly places the burden of proof on an applicant for a conditional use exception to demonstrate that the proposed land use would not detrimentally affect the health, safety, and general welfare of the community, the applicant has the initial burden to produce evidence, and also to

**(Footnote continued on next page…)**

RV park as proposed would create a dangerous condition because it would be built on a dirt mound in the middle of a floodplain thereby increasing the flooding risk to adjacent properties; that it would detrimentally impact the value of the nearby homes; and that there would be a detrimental impact on the local area through the increase in people and traffic. As a result, the Board correctly concluded that Landowner did not demonstrate its entitlement to the grant of a conditional use as required by the Township's Zoning Ordinance and failed to do so based on the credited evidence.

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

---

**(continued…)**

prove, that its proposed use meets all of the specifications and requirements provided by the Borough's zoning code for the grant of a conditional use. *Butler* [*v. Derr Flooring*, 285 A.2d 538, 542 (Pa. Cmwlth. 1971)]; *Bray* [*v. Zoning Board of Philadelphia*, 410 A.2d 909, 912 (Pa. Cmwlth. 1980)]. At that point, the objectors have a burden to produce evidence showing that the proposed development would have a detrimental effect on the health, safety, and welfare of the community. If the objectors produce such evidence, the applicant must then prove "that the intended use would not violate the health, safety, and general welfare of the community with relation to such objections." *Butler*, 285 A.2d at 542; *Bray*, 410 A.2d at 912 (internal quotation marks omitted)

*EQT Production Company v. Borough of Jefferson Hills*, 208 A.3d 1010, 1023 n.10 (Pa. 2019).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mar-Del Holdings, LLC,          :
         :
         Appellant     :
         :
         v.          : No. 1512 C.D. 2018
         :
Orange Township Board of     :
Supervisors          :
         :
         v.          :
         :
Patricia Brewster, Robert Brewster,   :
Fred Brockway, Jan Brockway,     :
John D'Orazio, Pam D'Orazio,     :
Susan B. Fetterman, Nathanial Flook, :
Sherry Flook, Charles Fritz, Jennifer   :
Fritz, Corey Hughes, Jaylenn Miller,   :
Andrew Smith, Christine Smith,     :
Eric Sorg and Erin Sorg          :

# **O R D E R**

AND NOW, this 9th day of <u>March</u>, 2020, the order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) dated October 29, 2018, is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge